**HI-PAC, LTD., Ron Pestel, & Jean Pestel, Plaintiffs,**

v.

**AVOSET CORP., Avoset International, Ltd., & Avoset Food Corp., Defendants.**

No. Civ. 96-00763 ACK.

United States District Court, D. Hawai'i.

Sept. 22, 1997.

Corporation or Avoset International[1] and Hi–Pac, Limited ("Hi–Pac" or "plaintiff"). The defendants are packagers and suppliers of perishable foods, i.e., dairy products, based in California, and Hi–Pac is a Hawaii corporation that distributes food to government retail outlets, food services and distribution centers. In October of 1993, the defendants allegedly entered into an agreement whereby they would package and supply dairy products to Hi–Pac who in turn would sell them to military bases and installations throughout Hawaii and the Pacific Region. In June of 1994, defendants allegedly refused to honor this agreement.

In response, on August 20, 1996, Hi–Pac, Hi–Pac's president, Ron Pestel, and Hi–Pac's vice president, Jean Pestel (collectively referred to as "plaintiffs") brought suit against Avoset Int'l asserting: (1) breach of contract; (2) tortious breach of contract; (3) negligent and/or intentional infliction of emotional distress; and (4) damage to business reputation. Plaintiffs amended their complaint wherein Avoset was the only named defendant.

On September 16, 1996, Avoset removed the action to this Court. On March 10, 1997, this Court denied Avoset's motion to dismiss or, in the alternative, to transfer venue, and gave plaintiffs leave to amend their First Amended Complaint. On March 25, 1997, plaintiffs filed their Second Amended Complaint to add Avoset Food and Avoset Int'l as defendants. Defendants filed their answer on April 4, 1997, and reasserted, inter alia, the affirmative defense that plaintiffs' claims are barred by lack of personal jurisdiction. On June 2, 1997, defendants filed the instant motion for summary judgment. Plaintiffs filed their opposition on August 27, 1997 to which defendants replied on September 4, 1997. The Court heard oral argument on September 15, 1997.

Philip R. Brown, Honolulu, HI, for plaintiffs.

Lennes N. Omuro, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### FACTUAL BACKGROUND

This case involves an alleged agreement between Avoset Corporation, Avoset Food

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

---

1. The term "defendants" refers collectively to Avoset Corporation, Avoset Food Corporation and Avoset International. When each of the defendants is referred to individually, it shall be identified as Avoset, Avoset Food and Avoset Int'l, respectively.

One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

■ Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics., Inc.*, 818 F.2d 1466,

1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31.

## DISCUSSION

### I. PERSONAL JURISDICTION AND TRANSFER OF VENUE

Preliminarily, the Court addresses defendants' contention (pursuant to Federal Rule of Civil Procedure 12(b)(2)) that this action is barred for lack of personal jurisdiction. On March 10, 1997, this Court denied defendant Avoset's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue opining that Avoset had the requisite sufficient contacts with the state to satisfy Hawaii's long-arm statute and the Due Process Clause. *See generally Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir.1990). Specifically, this Court held that Avoset had taken action in Hawaii whereby it purposefully availed itself of the privilege of conducting activities in the forum of Hawaii, thereby invoking the benefits and protections of the forum's laws, and further noted that subsequent 12(b)(2) motions would be entertained if, after discovery, the relationship between the various Defendants became more apparent.

■ Defendants contend that there is now an adequate basis for this Court to conclude that it does not have personal jurisdiction over Avoset Int'l, the only company with

which Hi–Pac had an alleged oral agreement. However, defendants have failed to provide the Court with sufficient additional evidence to clarify the parameters of the business relationships between the defendants. Rather, defendants merely assert that plaintiff never had any meetings with an Avoset representative in Hawaii, that plaintiff knew Avoset Int'l was the overseas marketing arm of Avoset Food, and that Hi–Pac never attempted to distribute Avoset products in Hawaii.

Defendants' assertions are belied by evidence produced in this case. First, both Avoset Food and Avoset Int'l initiated correspondence to the plaintiff. Second, Hi–Pac intended to market the Dairy Fresh line of products which are labeled for distribution by Avoset. Finally, defendants have offered no evidence to change the Court's earlier opinion that the defendants, even if they are separate corporate entities, were involved in a joint venture. The Court finds that plaintiffs have fulfilled their burden of establishing a prima facie case of personal jurisdiction over defendants.[2] The Court, therefore, properly has jurisdiction pursuant to 28 U.S.C. 1332(a).

## II. The Settlement Agreement Between Hidden Villa And Hi–Pac

Prior to addressing the motion for summary judgment, the Court disposes of defendants' proclamation that the suit is barred by a settlement agreement between plaintiffs and Hidden Villa Ranch ("Hidden Villa"). Prior to the filing of the instant suit, plaintiffs filed an action against Hidden Villa, which ultimately settled as reflected in a Mutual Release and Settlement Agreement ("Settlement Agreement"). The Settlement Agreement provides, in pertinent part, that:

6. *Binding on Successors*

The Agreement shall inure to the benefit of, and shall be binding upon, each of the parties hereto, and their ... *suppliers* ....

Defendants contend that they are released from the instant matter by virtue of the Settlement Agreement because Avoset Int'l supplies Hidden Villa with products manufactured by other Avoset companies.

■ The Court rejects defendants' arguments for two reasons. First, the breach of contract at issue in the Hidden Villa litigation occurred prior to the supplier relationship between defendants and Hidden Villa. Second, and more compelling, as demonstrated by affidavits, plaintiffs expressly rejected Hidden Villa's request to include the Avoset companies as releasees. Evidently, neither settling party intended to release the defendants from future litigation.

## III. *Breach of An Oral Contract*[3]

### A. *The Oral Agreement Was Sufficiently Definite To Withstand A Motion For Summary Judgment*

■ Generally, the construction and legal effect of a contract is a question of law. *Hanagami v. China Airlines, Ltd.,* 67 Haw. 357, 364, 688 P.2d 1139 (1984) (citations omitted). To be enforceable, a contract must be certain and definite as to its essential terms. *Boteilho v. Boteilho,* 58 Haw. 40, 564 P.2d 144, 146 (Haw.1977). The law leans against the destruction of contracts for uncertainty; courts shall favor a determination that an agreement is sufficiently definite. *In Re Application of Sing Chong Co.,* 1 Haw.App. 236, 617 P.2d 578, 581 (Haw.App.1980). Whenever possible, a court shall construe an agreement so as to carry the parties' intentions into effect, however a court will not enforce a contract unless it is sufficiently certain and definite. *Id.*

■ The terms of a contract are certain and definite if they provide a basis for determining the existence of a breach and for giving the appropriate remedy. *Almeida v. Almeida,* 4 Haw.App. 513, 669 P.2d 174, 179 (Haw.App.1983) (citing to Restatement 2nd Contracts § 33). A contract is not too indefi-

---

2. The Court hereby incorporates the reasoning and findings contained in its March 25, 1997 opinion denying Avoset's motion to dismiss for lack of personal jurisdiction or in the alternative to transfer venue and, accordingly, refrains from readdressing defendants' request for transfer.

3. It is undisputed between the parties that a written contract did not exist.

nite, even in the apparent absence of an essential term, if it provides an adequate method to ascertain it. *Honolulu Waterfront Ltd. v. Aloha Tower Dev. Corp.,* 692 F.Supp. 1230, 1235 (D.Haw.1988), *aff'd,* 891 F.2d 295, 1989 WL 150070 (9th Cir.1989). Moreover, of particular importance in this case is the rule that every contract imposes a duty of good faith and fair dealing upon the parties. *Hawaii Leasing v. Klein,* 5 Haw. App. 450, 698 P.2d 309, 313 (Haw.App.1985).[4]

 The terms of the oral contract between Hi–Pac and the defendants are sufficiently definite or reasonably determinable to withstand a motion for summary judgment. First, regarding the duration of the contract, there is ample evidence to establish that the defendants intended to be bound for at least one year. On December 14, 1995, Avoset Int'l sent plaintiffs a price-list of Dairy Fresh goods entitled "Hi–Pac Ltd. Price List," stating on the fax cover sheet that the quoted prices would remain in effect for one year. Additionally, on June 23, 1994, after defendants refused to honor Hi–Pac's placed orders, Avoset Food offered to pay Hi–Pac a 2% commission from defendants' net sales to military commissaries in Asia through December 31, 1995. Whether the parties intended to be bound for one year, eighteen months or longer is a question for the trier of fact. "The intent of the parties is a question of fact, and '[i]nasmuch as the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ, summary judgment often will be an *inappropriate means* of resolving an issue of that character.'" *Id.* (emphasis added) (citing to *Bishop Trust Co. v. Central Union Church,* 3 Haw.App. 624, 628–29, 656 P.2d 1353 (1983)).

The parties either agreed upon or provided a reasonable method of ascertaining essential terms, thus the contract is sufficiently certain and definite to withstand summary judgment.

## B. *Partial Performance By Hi–Pac Allows Enforcement Of The Alleged Oral Agreement Notwithstanding The Statute of Frauds*

Defendants further argue that plaintiffs claims should be barred because any alleged agreement was not written as required by the Statute of Frauds.

 It is well established in Hawaii, however, that an oral promise is enforceable notwithstanding the Statute of Frauds "where there has been substantial reliance by the party seeking to enforce the contract." *Hawaiian Trust Co., Ltd. v. Cowan,* 4 Haw. App. 166, 171, 663 P.2d 634 (citing to *McIntosh v. Murphy,* 52 Haw. 29, 34, 469 P.2d 177 (Haw.1970)). Thus, when injustice may only be avoided by enforcement of the alleged oral promise, the Statute of Frauds will not serve to bar a party's claims. *McIntosh,* 52 Haw. at 34–35, 469 P.2d 177.

 Here, plaintiffs allege that the parties entered into an oral contract in October of 1993, which provided that Avoset would package and supply dairy products to Hi–Pac who in turn would sell them to military bases and installations throughout Hawaii and the Pacific Region. Plaintiffs prepared to market and distribute the defendants' products as evidenced by (1) Hi–Pac's successful efforts to place 55 Avoset items on the Federal Supply Bulletin and (2) by Hi–Pac's business trips to procure purchase orders for Avoset products. Plaintiffs substantially relied upon defendants' representations until June of 1994 when the business relationship terminated. The Court also notes that on February 21, 1994, Doug Xiques, President/General Manager of Avoset Int'l ("Xiques"), wrote to Mr. Tim Luberski, President of Hidden Villa, about its relationship with Hi–Pac. (Plaintiff's Ex. 16). Xiques stated that "we began working with them" in late 1992 in pursuit of the military business in the Pacific. He noted that "when we began our military efforts and made our commitments to them we were competitors of not only Hidden Villa, but also of Favorite Foods. Having committed to

---

4. *See also Pure, Ltd. v. National Beverage Corp.,* 1993 WL 355147, at \*3–4, (9th Cir.1993) (unpub- lished disposition under 9th Cir. Rule 36–3).

supply, it is very difficult at best to 'unring a bell.' " Xiques concluded "I believe it is in our collective best interest to work together, thereby assuring no favoritism to any given party allowing for fair competitive activity." Accordingly, defendants' motion for summary judgment as to the Statute of Frauds is DENIED.

### C. There Are Material Issues Of Fact Whether The Oral Contract Was Terminable At Will

■ Defendants assert that the alleged contract is unenforceable because if a contract is deemed to have been formed, either party could have terminated it at any time. Defendants cite to *Scanlan v. Anheuser–Busch, Inc.* to support the proposition that because each party could have terminated the buyer-seller relationship at any time, there is no evidence of a contract. 388 F.2d 918, 920 (9th Cir.1968). Defendants simply misconstrue the court's holding. In *Scanlan*, the Ninth Circuit found that the submitted evidence conclusively established that the relationship between the parties was that of buyer-seller, "order-to-order, terminable at the will of either party." *Id.* There are no analogous evidentiary submissions in this case. Rather, the type of proposed relationship remains in dispute, therefore defendants' motion for summary judgment as to this claim is DENIED.

### D. *Lost Profits*

■ The Court additionally DENIES defendants' motion for summary judgment regarding the calculation of lost profits because, generally, "when one sustains loss by breach of a contract, he is entitled to have just compensation commensurate with his loss" provided that the party may establish his damages with reasonable certainty. *Chung v. Kaonohi Center Co.,* 62 Haw. 594, 604–605, 618 P.2d 283 (1980) (citations omitted). It is unresolved whether plaintiffs may establish their lost profits with reasonable certainty. Thus, material issues of fact exist that preclude granting summary judgment.

### IV. *Promissory Estoppel*

■ Defendants insist that any reliance by Hi–Pac upon the representations of Avoset representative, Xiques, was unreasonable as a matter of law. Hawaii has clearly adopted the doctrine of promissory estoppel, "the essence of which is detrimental reliance on a promise." *Ravelo v. County of Hawaii,* 66 Haw. 194, 199, 658 P.2d 883 (1983). To recover under a theory of promissory estoppel, plaintiffs must establish (1) a promise which the promisor should reasonably expect to induce action on the part of the promisee; (2) that the promisee relied to his detriment; and (3) that the reliance was "reasonable." *McIntosh v. Murphy,* 52 Haw. at 36, 469 P.2d 177 (Restatement 2nd, Contracts, § 90). Plaintiffs allege that defendants promised in October of 1993 to package and supply them with dairy products which Hi–Pac would then sell to military bases and installations throughout Hawaii and the Pacific Region. Hi–Pac relied upon defendants' representations by procuring purchase orders and by placing Avoset products on the Federal Supply Bulletin. Whether Hi–Pac's reliance was reasonable and whether defendants should have reasonably expected to induce such reliance raises genuine issues of material fact.[5] Defendants' motion for summary judgment as to detrimental reliance is hereby DENIED.

### V. *Damage to Business Reputation*

■ Plaintiffs have alleged damage to their business reputation as a result of defendants refusal to honor the alleged contract. However, plaintiffs have simply failed to offer sufficient evidence to support their claim for damage to reputation. To the contrary, plaintiffs concede that they are unable to identify or reasonably calculate any specific lost sales or profits from the Avoset course of dealings. Plaintiffs have failed to meet their burden, therefore, defendants' motion for summary judgment as to damage to business reputation is GRANTED.

---

5. Where a contract otherwise fails for indefiniteness, recovery may be permitted via the doctrine of promissory estoppel. However, any damages resulting from promissory estoppel shall be limited to the party's reliance damages. *See* e.g., Honolulu *Waterfront Ltd. Partnership v. Aloha Tower Dev. Corp.,* 692 F.Supp. at 1237 (citing to E. Farnsworth, Contracts, § 3.30 at 210).

## VI. *Intentional And Negligent Infliction of Emotional Distress*

■ Individual plaintiffs Ron and Jean Pestel alleged claims for both intentional and negligent infliction of emotional distress. Plaintiffs' motion for negligent infliction of emotional distress was withdrawn in their opposition to defendants' motion for summary judgment, thus the Court will only address intentional infliction of emotional distress. In a claim for intentional infliction of emotional distress, recovery is permitted if the alleged tortfeasor's acts were so "unreasonable" that they may be characterized as "outrageous." *Ross v. Stouffer Hotel Co., Ltd.*, 76 Hawai'i 454, 465, 879 P.2d 1037 (1994).

■ The Court finds that there are material issues of fact whether the defendants' acts were "so unreasonable that they may be characterized as outrageous." A trier of fact might conclude that defendants acted in an outrageous manner with regard to the rights of Hi–Pac following their parent company's acquisition of Favorite Foods which was a supplier of Hidden Villa, a competitor of Hi–Pac. On the other hand, the trier of fact might conclude that defendants acted reasonably in terminating any agreement with Hi–Pac after they had received a memorandum from the military commissaries stating that they were only in need of two suppliers of which Hi–Pac would make three. The Court finds that there are material issues of fact and therefore DENIES defendants' motion for summary judgment as to this claim.

## VII. *The Claims of The Individual Plaintiffs*

■ Plaintiffs are precluded from recovering damages in their individual capacity because "it is axiomatic that a stockholder, director, officer or employee of a corporation has no individual right of action against third persons for damages that result indirectly to the individual because of an injury to a corporation." *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F.Supp. 1365, 1380 (D.Haw.1995). Because the individual plaintiffs do not have standing to assert claims in this action for injury to Hi–Pac, defendants' motion for summary judgment regarding such claims by Ron or Jean Pestel is GRANTED.

## VIII. *Tortious Breach of Contract*

■ "Hawaii law recognizes a separate cause of action for tortious breach of contract" which allows for the recovery of damages. *Dold v. Outrigger Hotel*, 54 Haw. 18, 21–22, 501 P.2d 368 (1972). In order to recover punitive damages based upon a breach of contract, the plaintiff must demonstrate that the contract was breached in such a "wanton or reckless manner as to result in tortious injury." *Id.* at 22, 501 P.2d 368.

■ Here, as in *Dold*, the Court finds that there are material issues of fact whether the defendants' alleged breach of contract was sufficiently "wanton or reckless" to justify recovery in tort. The trier of fact might conclude that defendants acted in reckless disregard of the rights of Hi–Pac as a result of their parent acquiring Favorite Foods which was a supplier of Hidden Villa, a competitor of Hi–Pac. On the other hand, the trier of fact may conclude that defendants acted reasonably in terminating any agreement with Hi–Pac after they had received a memorandum from the military commissaries stating that they were only in need of two suppliers of which Hi–Pac would make three. The Court finds that there are material issues of fact and, accordingly, DENIES defendants' motion for summary judgment as to this claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants' motion for summary judgment.

IT IS SO ORDERED.