DAVID TAKESHI IKEGAMI, SHARON SACHIKO KANETSUNA, CLARA CHIEKO HAYASHI and CAROL SETSUKO WATASE, Plaintiffs-Appellants, *v.* HIRO IKEGAMI, also known as HIROKO IKEGAMI, individually and as Executrix of the Estate of Kichitaro Ikegami, Defendant-Appellee

NO. 6578

DECEMBER 18, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment dismissing appellants' complaint which sought to enforce an alleged contract to

make a will. The issue is whether the court below erred in finding as a matter of fact that it was not the intention of the parties to prevent the decedent from disposing of most of his estate during his life.

Plaintiffs-Appellants are the children of the decedent and his first wife. Decedent was a vice president of a savings and loan company, and had, for many years engaged in extensive estate planning with his counsel Ted T. Tsukiyama, Esq., as a result of which, deeds were executed in December of 1963, giving the decedent, his first wife and Appellants David and Carol Ikegami, each a one-fourth interest as tenants in common in the Akaka Place and Wiliwili Street properties.

The first wife died in 1964 and in January, 1965 decedent married the appellee. According to Mr. Tsukiyama's testimony, decedent was anxious to see that the appellee received what she was entitled to from his estate, and had a place to live and an income after his death but still desired to leave the bulk of his estate to his children.

In order to assure her a place of residence and a means of subsistence, the decedent and his four children on April 19, 1966 entered into an agreement drafted by the attorney which recited that it was the general intention of the decedent to distribute his estate on his death to his four children subject to his obligation and desire to provide for his wife and to assure her a place of residence and a means of livelihood. The agreement provided for the decedent to:

> make, constitute and provide for the First Parties [appellants] as major beneficiaries of his estate under his Will, subject to (a) an interest in said Manoa and McCully properties in favor of Hiroko Ikegami for and during her life, and to (b) the lawful rights of dower of Hiroko Ikegami in said estate or its equivalent as may be provided by his Will, should she survive him.

Pursuant to that agreement, the appellants, on that day, executed a deed to the appellee granting her a life estate in their interests in the Akaka Place premises and the decedent executed a will giving appellee a life interest in his interest in the premises at Akaka Place and Wiliwili Street in Honolulu and to one-third of all his personal property.

Specific bequests were made to appellants in the will with respect to certain real and personal assets but with respect to the remaining personal property, two-thirds of all personal property "of which I die possessed" was left one-half to Appellant David Ikegami and the remaining one-half in equal shares to the other three appellants.

Subsequently, the decedent converted most of the personal property he possessed at the time of the agreement into condominium apartments and bank accounts in the joint names of himself and the appellee, thus, greatly depleting his probate estate. In 1973, nineteen days before his death, he executed a new will leaving everything to the appellee.

The court below found:

9. That because decedent used the words "of which I die possessed" in his WILL, in referring to the property which he intended to leave to Plaintiffs of April 19, 1966, which WILL decedent executed in conformance with the AGREEMENT of that date, this Court does not find any promises, covenants and/or restrictions that prohibited decedent from conveying or disposing of his property during his lifetime.

10. Pertaining to the acquisitions, conveyances and/or dispositions of property made by decedent during his lifetime subsequent to his execution of the AGREEMENT and WILL of April 19, 1966, although Plaintiffs may have expected that decedent would not dispose of his property during his lifetime, this Court finds no intent to defraud nor any fraud perpetrated upon the Plaintiffs, because Plaintiffs were not entitled to his property until he died.

The court concluded:

3. That there were no promises, covenants and/or restrictions in said AGREEMENT and WILL prohibiting decedent subsequent thereto and during his lifetime from acquiring, conveying and/or disposing of his property. That although in the AGREEMENT Decedent promised to make the Plaintiffs the major beneficiaries of his estate, this language must be construed with the language of the WILL of even date with said AGREEMENT which

was part and parcel thereof and under which decedent left to the Plaintiffs the property of the decedent "of which I die possessed" which language excluded therefrom that which he may have disposed of during his life and included therein only that which he may have acquired and owned at his death.

4. That the expectations of Plaintiffs, to the effect that Decedent, with respect to any property in which he held any ownership or other beneficial interest, as of April 19, 1966, and any and all property he may have subsequently acquired or possessed, would not dispose of such property during his lifetime, but would rather hold such property for Plaintiffs' benefit as the major beneficiaries of his estate under his WILL and AGREEMENT were legally unjustified.

It is well-settled that a contract to make a will, if in writing, is enforceable. *Compare Shannon v. Waterhouse*, 58 Haw. 4, 563 P.2d 391 (1977).

Insofar as the findings of fact of the court below are findings that the parties did not intend that the decedent would not so transfer his assets during his lifetime as to defeat the purposes of the agreement, we hold them to be clearly erroneous in the light of the documents executed April 19, 1966 and the uncontradicted testimony of Mr. Tsukiyama as to the intentions of the parties in entering into the agreement.

As for the legal conclusions, the three documents of April 19, 1966 must be read together. When they are so read in the light of the testimony as to the objectives the parties were attempting to accomplish, it is clear that decedent's conveyance of his properties to himself and his second wife as tenants by the entirety or joint tenancy, using assets which he owned at the time of the agreement, was a violation of the agreement. *Compare Bruce v. Moon*, 57 S.C. 60, 35 S.E. 415 (1900) and *Wagar v. Marshburn*, 241 Ala. 73, 1 So.2d 303 (1941). Although there was no express provision in the agreement prohibiting the decedent from doing what he did, the agreement does provide:

Kichitaro Ikegami will, make, constitute and provide for the First Parties as major beneficiaries of his estate

under his Will, subject to . . . .

We think that under this language, fairly construed, the phrase "under his will" governs "when" not "what" he will provide to the appellants. In other words, he reserved the right to use and deal with his estate during his lifetime but took on the obligation of conveying, by will, the bulk of that estate to the appellants. Thus, there was no prohibition of his changing an asset from one form to another or of his expending it during his lifetime, or possibly even making gifts of small portions of it, *Wager v. Marshburn, supra,* but certainly turning the bulk of his extensive personal property into joint property with his second wife in the course of changing their form, was contrary to the intent of the parties when the agreement was entered into and was a violation of the agreement properly construed. The cases of *In Re Lenders' Estate,* 247 Iowa 1205, 78 N.W.2d 536 (1956) and *McCuen v. Hartsock,* 159 N.W.2d 455 (Iowa S.Ct. 1968) cited by appellee's counsel at oral argument are not in point. Those cases involved implied agreements arising out of the execution of mutual wills and were hence construed to apply only to properties coming to the surviving testator by the will of the other decedent. Here we have an express agreement together with testimony as to the intent of the parties in making that agreement.

Accordingly, the judgment below is reversed and the case is remanded for further proceedings not inconsistent herewith.

*John A. Chanin (Chanin & Ruthruff* of counsel) for appellants.

*Henry T. Hirai* for appellee.